IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TYRONE SHELTON,<br>    Plaintiff, | )<br>) |
| | )  Civil Action No. 7:22cv00289 |
| v. | ) |
| | )  By: Elizabeth K. Dillon |
| AMANDA C. FORD, *et al.*,<br>    Defendants. | )      United States District Judge<br>) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tyrone Shelton, a Virginia prisoner proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, and later moved to amend, which was permitted pursuant to Federal Rule of Civil Procedure 15(a)(1). The case was transferred to the undersigned on October 26, 2022.

Pending before the court and discussed herein are three motions: (1) defendants' motion to dismiss or, in the alternative, motion to sever (Dkt. No. 22); (2) defendant Amanda C. Ford's motion to join in defendants' motion to dismiss or, in the alternative, motion to sever (Dkt. No. 28); and (3) Shelton's motion for leave to file an amended complaint, accompanied by that proposed amended complaint (Dkt. No. 32). For the reasons set forth below, the court will grant defendant Ford's motion to join in the motion to sever, grant the motion to sever, and deny without prejudice the motion to amend. This case will be severed into this and four additional lawsuits.[1]

Both the current operative complaint (Dkt. No. 1, supplemented by Dkt. No. 14) and Shelton's proposed amended complaint contain unrelated claims against different defendants,

---

[1] Defendants, suggesting that the two conspiracy claims in Claim Seven should each be in a separate lawsuit, contend that there should six additional lawsuits. Upon review, however, the court concludes that the first conspiracy—at Green Rock—is sufficiently related to the claims in Claims One and Two that it should remain in this lawsuit with them. Similarly, the second conspiracy—at River North—closely relates to Shelton's claim concerning "ADA-accessible" showers. Thus, the court will include that portion of Claim Seven in the same lawsuit as Claim Four.

and they do not comply with Federal Rule of Civil Procedure 20.  Shelton states in his motion for leave to file an amended complaint that "[n]othing in the [Federal Rules] establishes that a plaintiff cannot join as many claims against as many defendants in one lawsuit; nor have multiple claims dealing with various violations of right protected by the constitution and/or federal statutes, to which would not be contrary to Rule 20 and the [PLRA]."  (Mot. to Amend 1–2, Dkt. No. 32.)  The court disagrees that Shelton should be permitted to bring multiple claims against numerous defendants, arising from unrelated incidents and that occurred at different prisons, which is what his current and proposed amended complaints contain.  As defendants note in their motion to sever, "he alleges different incidents between himself and the various Defendants that resulted in distinct injuries and that occurred on various dates at two separate VDOC institutions."  (Mem. Supp. Mot. Dismiss or Sever 7, Dkt. No. 23.)

Indeed, allowing all of Shelton's claims to proceed in a single suit would make that lawsuit unwieldy and inefficient.  It also would effectively allow Shelton to challenge various discrete events involving different defendants and different aspects of his incarceration in a single omnibus suit, in violation of the purposes of the Prison Litigation Reform Act ("PLRA"). Rule 21 of the Federal Rules of Civil Procedure allows a court the discretion to "sever any claim against a party" and proceed with it separately.  Fed. R. Civ. P. 21; *Spencer, White & Prentis, Inc. of Conn. v. Pfizer, Inc.*, 498 F.2d 358, 362 (2d Cir. 1974) ("[J]ustification for severance is not confined to misjoinder of parties.").  Use of Rule 21 has been approved by circuit courts in the context of initial review of prisoner complaints, with and without misjoinder.  *See Daker v. Head*, 730 F. App'x 765, 768 (11th Cir. 2018) (explaining that district court should have severed unrelated claims under Rule 21 and *sua sponte* dismissed improper defendants rather than dismissing prisoner's amended complaint); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011)

(holding that district court should have severed case into separate actions or dismissed improperly joined defendants).

Accordingly, the court will grant defendants' motion to sever and exercise its discretion to sever Shelton's claims into separate lawsuits, in order to promote judicial efficiency, ensure that the claims can be addressed in an orderly fashion, and to comport with the purposes of the PLRA.  In severing his claims, the court will use the claims and defendants identified in their motion to sever, and notes that Shelton has not objected to those summaries or characterization of his claims.

As summarized by defendants, Shelton's claims in his current complaint are as follows:

> **Claim One, "Retaliation"**: In September 2021, Plaintiff filed complaint(s) at Green Rock about Correctional Officer Hammack. Thereafter, Sgt. Towler came to Plaintiff's cell and questioned him. Later, Sgt. Towler issued a disciplinary charge against the Plaintiff and placed Plaintiff in general detention at Green Rock. (ECF No. 1, at 5–6.)
>
> **Claim Two, "Due Process"**: On September 13, 2021, at Green Rock, the Institutional Classification Authority and Multi-Disciplinary Team recommended that Plaintiff return to General Population because the disciplinary charge filed by Towler did not meet the criteria for placing Plaintiff in the Restrictive Housing Unit ("RHU"). However, "Kanode later that day placed Plaintiff back into the RHU without any rationale." Plaintiff appealed Kanode's decision which was upheld by Coleman and Manis. Then, on September 21, 2021, Coleman placed Plaintiff back in the RHU and Kanode and Manis upheld this decision. Later, on September 28, 2021, Plaintiff was recommended to be placed in General Population but he was not because on September 30, 2021, "Harris and Northrup met in secrecy and had a hearing and placed Plaintiff back into the RHU." Coleman and Harris upheld this decision. (*Id.* at 6–8.)
>
> **Claim Three, "Property Interest"**: "From September 18, 2018 until April 7, 2021, Plaintiff was forced to enter into an agreement with numerous agents of the Virginia Department of Corrections . . . specifically establishing that he was willing to go into debt by receiving loans periodically to mail his legal mail and for legal copies." (*Id.*) On April 7, 2021, Plaintiff received a $1,400 stimulus check from the government, and at that time, Amanda C. Ford at Green Rock authorized for the prison business office to take [] $129.21 to offset the loans for legal mail and legal copies." (*Id.* at 10.) Plaintiff then attempted to file grievance(s) about this. (*Id.*)

3

**Claim Four, "Disability"**: On August 3, 2021, VDOC ADA Coordinator Barry Marano approved the Plaintiff for an ADA accessible shower. (*Id.* at 11.) On October 8, 2021, Plaintiff was transferred from Green Rock to River North. (*Id.* at 8.) However, once Plaintiff was transferred to River North, the River North ADA Coordinator Hamm "abandoned all efforts to assist Plaintiff in gaining access to a handicap shower." Plaintiff filed grievance(s) at River North about this and he was moved to a housing unit with a handicap shower. However, Anderson, who responded to Plaintiff's grievance, "never addressed Plaintiff's ADA status [that] . . . should have been valid at River North." Plaintiff was then moved to the ADA unit of River North where he had access to two showers. Plaintiff sent a request inquiring whether the move could be made "official" but Sgt. Coe denied the accommodation. Plaintiff filed a complaint to which Richardson responded and B. Walls "refused to process." (*Id.* at 11–16; see also ECF No. 14, at 6.) "Plaintiff filed a complaint regarding the denial, and, in response, Richardson stated 'you are currently housed in the ADA pod.'" (ECF No. 14, at 6.) "In addition, plaintiff continued to pursue the complaint and, on December 27th, 2021, [] Walls refused to process the grievance[.]" (*Id.*) In March/April 2022, Richardson then moved the Plaintiff out of the housing unit on alleged medical orders from Dr. Mathena. Plaintiff was placed in the RHU because he refused to be moved. (ECF No. 1, at 14.) Plaintiff filed another complaint that Walls "refused to process." On April 22, 2022, Bateman responded to a request form sent to him by the Plaintiff and stated that the ADA accommodations provided for the Plaintiff were still in effect at River North and therefore Richardson should not have moved the Plaintiff away from the handicap showers and "the whole time Plaintiff was trying to get Hamm to approve his ADA status, the status was still in effect[.]" On April 28th, 2022, Mr. Wright, Physician Asst., discovered, after talking to plaintiff and reviewing his medical records, that Nurses Davis and Waller intentionally gave misleading information about Dr. Mathena and the Physical Therapist, McBrady, writing a note in plaintiff's medical records stating that he had no longer needed a handicap shower with rails for support[. . . . The notation never existed, to which [Wright] amended his initial notation and written an Medical Special Alert Pass establishing that 'plaintiff should use hand rail when transitioning into and out of shower.' Due to the actions and inactions of defendants Davis, Waller, Hamm, Coe, and Walls collectively, Plaintiff was denied a total of fifty-one (51) showers.[] Also, on April 11th, 2022, David Anderson, Warden considered Plaintiff's grievance as being unfounded even after Plaintiff provide[ed] him with medical records showing that raise in the shower was mandatory for safety purposes." (*Id.* at 11–16.)

**Claim Five, "Part II of Disability"**: In March 2022, at River North, Plaintiff's physical therapist ordered that the Plaintiff be brought to medical twice a week for sixty (60) days for physical therapy. However, for the entire month of April 2022, Nurse King refused to schedule Plaintiff's physical therapy sessions. B. Walls refused to process Plaintiff's grievance about this issue. (*Id.* at 16–17.)

> **Claim Six, "Part III of Disability"**: In November 2021 at River North, Plaintiff was seen and evaluated by Nurse Rector for injuries that he sustained from the shelf located at the end of his bed. Nurse Rector noted that Plaintiff had bruises to a toe on his right foot. Plaintiff was referred to Dr. Mathena. In December 2021, Plaintiff was seen by Dr. Mathena. Dr. Mathena ordered x-rays be taken of Plaintiff's toes. Dr. Mathena also sent an email to T. Hamm about whether there were additional accommodations that could be made for the Plaintiff to prevent him from injuring himself. In December 2021, the x-rays were done and were found inconclusive. However, T. Hamm never answered Dr. Mathena's email. Plaintiff therefore filed a Request for Reasonable Accommodations to Hamm wherein he requested that the steel plate and screws at the bottom of his bed be removed. Plaintiff's request was denied by Sgt. Coe. Plaintiff was forced to sleep on the floor of his cell until April 1, 2022. Plaintiff initiated a complaint against Sgt. Coe but B. Walls refused to process the grievance. In May 2022, Richardson told Plaintiff that he would be placed in the medical center pending an interview with T. Hamm to determine what accommodations could be made for the Plaintiff. On May 5, 2022, Plaintiff was placed in the medical center and remained there until May 17, 2022. However, Plaintiff never spoke with T. Hamm and Assistant Warden Bateman told the Plaintiff that nothing could be done about the shelf at the bottom of Plaintiff's bed per T. Hamm. Plaintiff therefore refused to return to his cell and was therefore placed in the RHU. Further, in May 2022, Dr. Mathena disputed that Plaintiff could not sleep in his bed with the steel shelf. "Due to the irrational advice given by Mathena, and the potential risk of plaintiff re-injuring himself, [Plaintiff] elected to remain in the RHU." (*Id.* at 17–21.)
>
> **Claim Seven, "Conspiracy Transfer and False Disciplinary Reports"**: In September 2021, Plaintiff filed a regular grievance at Green Rock against Kanode, Coleman, Harris and Northrup for intentionally conspiring to have their staff generate false disciplinary report [sic] against him to raise his security level points to transfer him to a higher security level right due to Plaintiff's consistent filing of prison complaints and lawsuits." While Plaintiff was being held at Green Rock in the RHU, Plaintiff was reclassified "as a result of several false disciplinary reports." Plaintiff was then transferred to River North in October 2021, "thus confirming the conspiracy." "In the month of Nov[ember] 2021, another conspiracy was being implemented by Defendants Anderson, McBride, Hamm, Coe, Sharpe, Crabbe, Davis, and Waller, and later, Defendants Mathena, Walls, Haynes, Miller, Montgomery, Hodge, Bateman, and Hall was instrumental in helping with the conspiracy. From Nov[ember] of 2021 until March 31st, 2022, defendants Anderson, McBride, Hamm, Coe, and Sharpe either intentionally denied Plaintiff permanent access to the ADA [] pod with its ADA accessible showers and/or influence the decisions of others to deny him permanent access." (ECF No. 14, at 7–10.)

(Mem. Supp. Mot Dismiss or Sever, 3–5, Dkt. No. 23.)

Grouping related claims together, the court will leave in this case Claims One, Two, and the first part of Claim Seven. It will direct the Clerk to create four new civil actions, consisting of: (1) Claim Three; (2) Claim Four and the second part of Claim Seven; (3) Claim Five; and (4) Claim Six. Notably, the court's ruling does not deprive Shelton of his right to litigate any of the claims in his current complaint or proposed amended complaint. He simply may not litigate all of his unrelated claims against all these defendants in this single lawsuit, while being held accountable for only one filing fee. Each of the four new lawsuits will be conditionally filed. If Shelton chooses to proceed with the severed claims in the new, separate lawsuits, he will be required to consent to the collection of a separate fee in each lawsuit he wants to pursue. If he does not want to proceed with any particular claim, he may decline to consent to the fee or he may move to voluntarily dismiss that lawsuit.

Moreover, the fact that the court is allowing the filing of his other claims in other lawsuits or referring to them as "claims" is not a finding that he has stated any meritorious claim for relief under the Constitution and 42 U.S.C. § 1983. Instead, the claims in each case will be evaluated by the court after Shelton complies with the requirements of each case's conditional filing order.

Lastly, in light of its ruling, the court will deny without prejudice Shelton's latest motion to amend (Dkt. No. 32.) If Shelton wants to amend any of the specific claims in any of the new lawsuits, he may separately seek leave to do so. Additionally, if he wants to file another motion to amend in this lawsuit, with a new proposed complaint setting forth allegations related only to Claims One, Two, and the first part of Seven, and including only the defendants in this lawsuit, he may do so.

## CONCLUSION AND ORDER

In accordance with this Opinion, it is ORDERED as follows:

1. Defendant Ford's motion to join the defendants' motion to dismiss (Dkt. No. 28) is GRANTED.

2. Defendants' motion to sever (Dkt. No. 22) is GRANTED, but the court will divide the cases differently than defendants propose.

3. Plaintiff's motion to amend (Dkt. No. 32) is DENIED WITHOUT PREJUDICE.

4. The court will SEVER Shelton's claims utilizing the summaries set forth in this opinion at pages 3–5, but will not follow defendants' suggestion as to the division of Claim Seven.  Going forward, this case will consist only of Claim One, "Retaliation," Claim Two, "Due Process," and the first part of Claim Seven, dealing with the alleged conspiracy at Green Rock.  The defendants will be Towler, Kanode, Coleman, Manis, Harris, and Northrup.  All other defendants should be terminated as parties.

5. In this case, Shelton should file any renewed motion to amend (related only to these two claims and the listed defendants) within thirty days.  If he does so, defendants shall respond to the motion to amend not later than thirty days after it is entered on the docket.  If he does not file such a motion, then defendants shall answer or otherwise respond to the current complaint (as it relates to these claims) not later than sixty days after entry of this order.

6. The Clerk is DIRECTED to open four new civil cases and to docket this Memorandum Opinion and Order (as an attachment to the Complaint) and Shelton's current complaint (Dkt. No. 1 and Dkt. No. 14) in each of four new cases.  The new cases SHALL include the claims and defendants as set forth below.  In each new civil action, the Clerk shall include in the first docket entry, in bold type, the Claim(s) that

will be considered in that case. Each such claim is based on the allegations summarized in this opinion at pages 3–5. The Clerk also shall send Shelton a copy of each of these new docket sheets to give him clear notice of the new case numbers and the content of each new case.

   A. New Lawsuit One: Claim Three, "Property Interest," against defendant Ford;

   B. New Lawsuit Two: Claim Four, "Disability (Handicap Showers)," and the Second Part of Claim Seven (dealing with the alleged conspiracy at Green Rock) against defendants Anderson, Mathena, Coe, Richardson, Waller, Davis, Hamm, Bateman, Walls, McBride, Sharpe, Crabbe, Haynes, Miller, Montgomery, Hodge, and Hall;

   C. New Lawsuit Three: Claim Five, "Part II of Disability (Physical Therapy)" against defendants King and Walls; and

   D. New Lawsuit Four: Claim Six, "Part III of Disability (Removal of Bed Shelf)," against defendants Rector, Mathena, Hamm, Coe, Bateman, and Walls.

7. In each of the four new cases, the Clerk shall also docket Shelton's prisoner trust account report and his statement of assets (Dkt. Nos. 3 and 5). Each new case shall be conditionally filed and the Clerk shall send a consent-to-fee form with the same partial initial filing fee amount as in this case (*see* Dkt. No. 6). Shelton shall be required to return the consent-to-fee form by the deadline set forth in each case to continue to pursue the claim(s) presented in that action. Alternatively, he may notify the court that he wishes to voluntarily dismiss any particular action.

8. Shelton should carefully consider which cases and claims to pursue. If he elects to proceed with a case, and the claims in it are later dismissed as frivolous or for failure to state a claim, that dismissal will likely count as a "strike" for purposes of the PLRA's three-strikes provision, 28 U.S.C. § 1915(g). *See Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1727 (2020) (holding that a dismissal of a suit for failure to state a claim, whether with or without prejudice, counts as a strike under the PLRA).

The Clerk is DIRECTED to provide a copy of this memorandum opinion and order to Shelton.

Entered: December 5, 2022.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge